914 P.2d 1300

**STATE of Arizona, Appellee,**

v.

**Sharon Lee TARANGO, Appellant.**

**No. CR–95–0118–PR.**

Supreme Court of Arizona,
En Banc.

April 16, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals

Section, Monica D. Beerling, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Paul J. Prato, Deputy County Public Defender, Phoenix, for Appellant.

## OPINION

MOELLER, Justice.

### STATEMENT OF THE CASE

In affirming defendant's sentence for a drug offense with two prior felonies, the court of appeals held that defendant would be parole eligible under former A.R.S. § 13-604(D) after serving two-thirds of her sentence despite language in former A.R.S. § 13-3408(D), which would have called for a flat time sentence if she had been sentenced as a first-time offender.

The opinion of the court of appeals in this case conflicts with an earlier opinion of that court which held that a defendant sentenced in a similar manner was not parole eligible under former A.R.S. § 13-1406(B). *State v. Behl,* 160 Ariz. 527, 774 P.2d 831 (App.1989). We granted the state's petition for review to resolve the conflict, and have jurisdiction pursuant to article VI, section 5(3) of the Arizona Constitution. We agree with the court of appeals' opinion in this case.

### FACTS AND PROCEDURAL HISTORY

Sharon Lee Tarango (defendant) was convicted of one count of sale of narcotic drugs and two counts of possession of narcotic drugs for sale, each a class 2 felony. The state had charged in the indictment, and the trial court found, that she had two prior felony convictions. The trial court imposed three concurrent sentences of 15.75 years, the presumptive term for class 2 felonies with two or more prior felonies, as prescribed by former Arizona Revised Statutes Annotated (A.R.S.) § 13-604(D). These presumptive sentences were 8.75 years longer than the presumptive sentence for a first-time class 2 felon. Former A.R.S. § 13-

701(C)(1). The trial court's sentencing order was silent on the issue of parole eligibility.

On appeal, defendant argued that she was parole eligible under A.R.S. § 13-604(D) after serving two-thirds of her sentences, while the state argued that A.R.S. § 13-3408(D) required her to serve the entire length of her sentences without parole.[1]

The court of appeals held that defendant was eligible for parole after serving two-thirds of her sentences. *State v. Tarango,* 182 Ariz. 246, 250-51, 895 P.2d 1009, 1013-14 (App.1994).

It is clear that had defendant been convicted only of the instant offense without priors, she would not be parole eligible. Former § 13-3408(D) provided, *inter alia:*

> A person who is convicted of [possessing a narcotic drug for sale or selling a narcotic drug] is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis until the person has served the sentence imposed by the court.

The court of appeals held, however, that when the state seeks the enhanced sentencing penalties allowed by former § 13-604, the release penalties of that section, not § 13-3408(D), apply. *Tarango,* 182 Ariz. at 251, 895 P.2d at 1014. The court found the language of A.R.S. § 13-604(K) dispositive. *Id.* at 250-51, 895 P.2d at 1013-14. That section provides:

> The penalties prescribed by this section shall be substituted for the penalties otherwise authorized by law if the previous convictions ... [are] charged in the indictment or information and admitted or found by the trier of fact.

### DISCUSSION

■ We agree with the court of appeals. The language of former A.R.S. § 13-604(K) is plain and unambiguous. When the state seeks the enhanced penalties for repeat offenders, former A.R.S. § 13-604 provides an

1. Legislation effective Jan. 1, 1994, amended both A.R.S. § 13-604(D) and § 13-3408(D) to allow for the possibility of parole only after serving at least 85.71 percent of the sentence. *See*

1993 Ariz.Sess.Laws, Ch. 255, §§ 7, 44, 87; A.R.S. §§ 13-604(D), 13-3408(D), 41-1604.07(A) (Supp.1995) (requiring prisoners to serve six days before earning one day of release credit).

exclusive sentencing scheme. *See Canon School Dist. No. 50 v. W.E.S. Const. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994) ("[W]here the language is plain and unambiguous, courts generally must follow the text as written."); *Mid Kansas Fed. Sav. & Loan Ass'n v. Dynamic Dev. Corp.,* 167 Ariz. 122, 128, 804 P.2d 1310, 1316 (1991) (same).

██ Essentially the state argues that former A.R.S. § 13–3408(D) implicitly repealed the exclusive penalty language in former A.R.S. § 13–604(K). However, "the law does not favor construing a statute as repealing an earlier one by implication. Rather, whenever possible, this court interprets two apparently conflicting statutes in a way that harmonizes them and gives rational meaning to both." *Hernandez v. Arizona Bd. of Regents,* 177 Ariz. 244, 249, 866 P.2d 1330, 1335 (1994) (citations omitted); *see Baker v. Gardner,* 160 Ariz. 98, 101, 770 P.2d 766, 769 (1988) ("Courts construe seemingly conflicting statutes in harmony when possible."); *Pima County v. Maya Constr. Co.,* 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988) ("[W]hen reconciling two or more statutes, courts should construe and interpret them, whenever possible, in such a way so as to give effect to all the statutes involved.").

Former § 13–604 itself anticipated the possibility of conflicting statutes and explicitly provided that the penalties set forth in that section would govern. *See* former § 13–604(K). Against the backdrop of this prior existing legislation, the only reasonable interpretation of former § 13–3408(D) is that it applies only when the situations addressed by former § 13–604 (repetitiveness and/or dangerousness) are not present. Because the legislature chose not to repeal the existing exclusive provisions for repeat and/or dangerous offenders, we must assume that the legislature intended former § 13–3408(D) to apply only to first-time, non-dangerous offenders.

██ We are also guided by the rule of lenity. When a statute is "susceptible to more than one interpretation, the rule of lenity dictates that any doubt should be resolved in favor of the defendant." *State v. Pena,* 140 Ariz. 545, 549–50, 683 P.2d 744, 748–49 (App.1983) (decision approved and adopted in *State v. Pena,* 140 Ariz. 544, 683 P.2d 743 (1984)); *see Callanan v. United States,* 364 U.S. 587, 596, 81 S.Ct. 321, 326–27, 5 L.Ed.2d 312 (1961); *State v. Johnson,* 171 Ariz. 39, 42, 827 P.2d 1134, 1137 (App. 1992). The flat time provision of former § 13–3408 either applies to all sentences—enhanced and unenhanced—or, because of the existence of former § 13–604(K), applies only to unenhanced sentences. The rule of lenity suggests an interpretation that permits parole eligibility.

The state also argues that former A.R.S. § 13–603(A) requires us to rule in favor of flat time enhanced sentences. That statute reads:

> Every person convicted of any offense defined in this title or defined outside this title shall be sentenced in accordance with this chapter and chapters 7, 8 and 9 of this title unless otherwise provided by law.

Former § 13–603(A) (footnote omitted).

We do not interpret this language to mean that courts may, in derogation of former § 13–604(K), substitute the flat time provision of former § 13–3408(D) for former § 13–604(D)'s two-thirds time release eligibility provision. Rather, we interpret former § 13–603(A) to mean that where a statute specifies a particular range of sentencing, that statute shall govern.[2] Otherwise chapters 6–9 of title 13 shall provide the range of sentencing. Former § 13–3408 does not provide its own range of sentencing for the offenses it describes; therefore, trial courts must look elsewhere to determine the appropriate sentence. For first-time offenders, former §§ 13–701 and 13–702 provide the range of sentences for the classes of felonies listed in former § 13–3408. For repeat and/or dangerous offenders, former § 13–604, with its exclusive penalty provisions, provides the range of sentences.

Because we find the statutes can be harmonized by recognizing the limited applica-

---

**2.** For example, A.R.S. § 28–1751 provides a specific sentence for a person convicted of operating an aircraft while intoxicated.

tion of former § 13–3408(D), we necessarily reject the analysis employed by the court of appeals in *State v. Behl,* 160 Ariz. 527, 774 P.2d 831 (App.1989). The *Behl* court held that the flat time sentence provision in a prior version of our sexual assault statute, former A.R.S. § 13–1406(B), governed even though the state indicted the defendant as a dangerous offender under former A.R.S. § 13–604(G), which provided for enhanced penalties but did not call for flat time. *Behl,* 160 Ariz. at 530, 774 P.2d at 834. In *Behl,* the court of appeals stated that former §§ 13–604(G) and 13–604(K) could not be reconciled with former § 13–1406(B) and that the sentencing court was required to apply the flat time provision of § 13–1406(B) because it was the more recent and specific statute. *Id.; see Lemons v. Superior Court of Gila County,* 141 Ariz. 502, 505, 687 P.2d 1257, 1260 (1984); *Pima County v. Heinfeld,* 134 Ariz. 133, 134–36, 654 P.2d 281, 282–84 (1982); *Webb v. Dixon,* 104 Ariz. 473, 475–76. 455 P.2d 447, 449–50 (1969). In doing so, the *Behl* court quoted but did not apply the exclusive penalty language of former § 13–604(K) and affirmed a flat time enhanced sentence. 160 Ariz. at 529–30, 774 P.2d at 833–34.

The *Behl* court was understandably concerned about the potentially anomalous result that could occur when a sexual offender who commits an act in a dangerous manner is eligible for release sooner than a sexual offender who commits the same offense in a non-dangerous manner. Of course, parole eligibility does not compel release on parole. Because former § 13–604(G) provided that dangerous offenders who had no qualifying prior convictions could receive a sentence as low as seven years, with release eligibility at two-thirds time served, it was theoretically possible that a dangerous offender could be released in 4.67 years. On the other hand, under former § 13–1406(B), a non-dangerous sexual offender with no prior felonies and a fully mitigated sentence of 5.25 years would have to serve the full 5.25 years. *See* former

A.R.S. §§ 13–701(C)(1) and –702(B). However, such an apparent anomaly could only occur when the sentence was mitigated. If the court imposed a presumptive or aggravated term, a dangerous offender could not be released sooner than a non-dangerous offender with a flat time sentence. In actuality, we believe that the anomalous result with which the *Behl* court was concerned will rarely occur.

The dissent refers to the court of appeals' memorandum decision in *State v. Lambson,* 1 CA–CR 92–0999/1 CA–CR 93–0769–PR, pp. 17–19 (memo. dec. Jan. 31, 1995), a case we consolidated with the present one for purposes of oral argument. That case presents the apparent anomaly the *Behl* court feared. However, we note that had the trial court known the defendant would be parole eligible after serving two-thirds of his time, the sentence might have been longer in the first instance. Because Lambson's sexual assault offense was dangerous, his sentence could have been anywhere from 7 to 21 years. §§ 13–604(G), –701(C)(1). If Lambson had been sentenced to the maximum 21–year term he would not be eligible for parole until serving 14 years. *Id.* By contrast, if Lambson had committed a non-dangerous sexual assault, his flat time sentence could have been anywhere from a low of 5.33 years to a high of only 14 years. §§ 13–1406(B), –701(C)(1), –702. As the dissent notes, Arizona's enormously complex sentencing scheme is not perfect. Not every possible sentence can be fully reconciled with every other sentence on a purely logical basis. But we are not permitted to rewrite statutes and believe that any attempt to do so on a case-by-case basis might well result in even greater anomalies.[3]

The state did not have to invoke former § 13–604(D), but when it did it subjected the defendant to the possibility of far more incarceration time than a defendant sentenced to flat time as a first-time offender. The statutes in force at the time of defendant's offense called for a presumptive term of im-

---

**3.** Legislation effective Jan. 1, 1994, resolved the anomaly facing the *Behl* court by amending A.R.S. § 13–604(G) and § 41–1604.07 to provide that those who commit a class 2 felony in a dangerous manner must serve at least 85.71% of

their sentence. *See* 1993 Ariz.Sess.Laws, Ch. 255, §§ 7, 87; A.R.S. §§ 13–604(I), 41–1604.07(A) (Supp.1995) (requiring prisoners to serve six days before earning one day of release credit).

prisonment of 7 years for a first-time class 2 felony. Former § 13–701(C).[4] That sentence could be reduced to 5.25 years or increased to 14 years. Former § 13–702(B).[5] By contrast, the sentencing range for a class 2 felony committed by a person with two or more prior felonies was 14 to 28 years, with a presumptive sentence of 15.75 years. Former § 13–604(D). Even with time off for good behavior, the earliest release date, based on a fully mitigated sentence, would be 9.33 years—almost double that of a fully mitigated flat time sentence for a first-time offender. *Id.*

The vast differences in sentencing ranges which can occur when the enhancement penalties are invoked may be even more extreme than that presented in defendant's case. For example, if a defendant who had previously been convicted of two or more class 1, 2, or 3 felonies commits a class 2 felony in a dangerous manner, the enhanced penalties of § 13–604 would provide a sentencing range of 21 to 35 years. §§ 13–604(G), –701(C). This is in stark contrast to the sentencing range provided for a first-time class 2 non-dangerous felony which is 5.33 to 14 years. §§ 13–701(C), –702(B).

In the case before us, defendant will be parole eligible after serving two-thirds of her sentence, or 10.5 years. This means that, at the earliest, defendant will serve a sentence three-and-a-half years longer than one she would have served had she received the presumptive flat time term as a first-time offender. Of course, because parole is not automatic, defendant may serve her entire sentence, which is more than double the presumptive sentence she would have served as a first-time offender.

The state also argued on appeal that the legislature intended for courts to combine the provisions of former § 13–3408(B) and former § 13–604(D) so as to impose enhanced flat time sentences. The only evidence of such legislative intent offered by the state was a handout, the origin of which is unknown, that was distributed to the members

of the House Appropriations Committee. Minutes of Committee on Appropriations, Arizona House of Representatives, Apr. 10, 1987, Attachment 1. This handout did state, *inter alia,* that the penalties in proposed § 13–3408 called for enhanced flat time sentences. However, we have no way of knowing if the handout represented the intent of the majority of legislators. We do know that the legislature chose to retain the language of former § 13–604(D) and former § 13–604(K).

■ In the absence of clear legislative intent to the contrary, we will not find exceptions to a statute that calls for exclusive penalties. We have a duty to avoid rendering statutory language superfluous, void, contradictory, or insignificant. *Devenir Assocs. v. City of Phoenix,* 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991); *Arnold v. Arizona Dept. of Health Servs.,* 160 Ariz. 593, 603, 775 P.2d 521, 531 (1989); *State v. Superior Court (Kerr–McGee Corp.),* 113 Ariz. 248, 249, 550 P.2d 626, 627 (1976). Accepting the state's argument would require us to render former § 13–604(K)'s exclusive penalty provision void.

### CONCLUSION AND DISPOSITION

We agree with the opinion of the court of appeals to the extent it held that defendant will be parole eligible after serving two-thirds of her sentence, and the trial court's sentencing order is supplemented accordingly. The Department of Corrections should henceforth calculate parole eligibility dates in accordance with this opinion. Post-conviction relief is available to correct any denial of parole eligibility which is at variance with this opinion.

FELDMAN, C.J., ZLAKET, V.C.J., and ROBERT J. CORCORAN, J. (Retired), concur.

---

**4.** Since Jan. 1, 1994, the presumptive term of imprisonment for a first-time class 2 felony is five years. Ariz.Sess.Laws 1993, Ch. 255, § 10; A.R.S. § 13–701(C) (Supp.1995).

**5.** Since Jan. 1, 1994, the sentencing range for most first-time class 2 felonies is 4–10 years. Ariz.Sess.Laws 1993, Ch. 255, § 11; A.R.S. § 13–702(A) (Supp.1995).

MARTONE, Justice, dissenting.

I do not believe that A.R.S. § 13–604(K) supports the court's conclusion that the release eligibility conditions of § 13–604 control over the release eligibility conditions of § 13–3408(D). Our statutory scheme distinguishes between terms of imprisonment and release eligibility. A.R.S. § 13–701(C) provides[1] terms of imprisonment for felonies for a first offense except as provided in § 13–604. Section 13–604 provides for enhanced terms of imprisonment for dangerous and repetitive offenders. Section 13–604(K), upon which the majority relies, provides that the "penalties prescribed by this section," that is, the enhanced penalties, are substituted for those otherwise authorized by law, only if the prior conviction or the dangerous nature of the felony is alleged in the indictment or information. Thus, even if an offense otherwise would qualify as a dangerous nature offense, or a repetitive offense, the enhanced penalties of § 13–604 do not apply unless specifically charged by the prosecutor. All this means, then, is that the term of imprisonment for a felony is determined by § 13–701, unless § 13–604 applies and the prosecutor so charges the case.

Section 13–604(K) does not state that the penalties under § 13–604 control over penalties elsewhere, but only that the penalties under § 13–604 apply if, and only if, the case is charged as a repetitive or dangerous offense case. It is § 13–701(C) that provides for terms of imprisonment "[e]xcept as provided in § 13–604." Thus, § 13–604(K) contains words of description not words of limitation. We are left, then, with an apparent conflict between statutes that § 13–604(K) does not solve.

Let us turn to parole eligibility. Section 13–604(K) has nothing to do with parole eligibility. Parole eligibility, generally, is not even found in Title 13, the Criminal Code. We look to Title 31 and Title 41 for parole eligibility. A.R.S. § 31–412(A) provides the criterion for release on parole, "if the applicant has reached his earliest parole eligibility date pursuant to § 41–1604.06, subsection D." And, under § 41–1604.06(D) "the prisoner's earliest parole eligibility occurs when the prisoner has served one-half of his sentence unless such prisoner is sentenced according to any provisions of law which prohibit the release on any basis until serving not less than two-thirds of the sentence imposed by the court, the sentence imposed by the court or any other mandatory minimum term, in which case the prisoner must have served the sentence required by law." In short, one must serve one-half the sentence unless some other sentencing statute requires otherwise.

We turn to § 13–604(D). It provides for parole eligibility after two-thirds of the sentence has been served. But § 13–604(D) is a general statute calculated to lengthen the otherwise applicable one-half time to two-thirds time. It was not intended to shorten to two-thirds time offenses that already came with flat time upon conviction.

A.R.S. § 13–3408(D) is a more specific statute applicable only to drug offenses and requires the entire sentence to be served. Unlike A.R.S. § 13–701(C), which only applies to "a first offense," § 13–3408(D) applies to any person who is convicted of selling a dangerous drug. On its face, it applies whether the person has been convicted the first time, the second time, or the tenth time. Thus, as here, if one is convicted of selling drugs with two prior felony convictions, the following would apply. To determine the term of imprisonment, one goes to § 13–701(C) and concludes that because it is not a "first offense," § 13–604 applies. For terms of imprisonment, one would therefore look to § 13–604(D). As to parole eligibility, one looks to § 41–1604.06(D) which then refers to § 13–3408(D) which on its face, unlike § 13–701(C), is not limited to first offenders. In the end, § 13–3408(D) requires the entire term to be served whether it is a first offense or a multiple offense.

This is how I read these statutes. In my view, this reading is not only accurate, but it is supported by common sense. I simply do not believe that the legislature would have required flat time for a first offense drug offender, but allow for less than flat time for a multiple drug offender.

---

1. I refer to the statutes in existence at the time    this case arose.

The majority says that it believes "that the anomalous result with which the *Behl* court was concerned will rarely occur." *Ante,* at 211, 914 P.2d at 1303. But it has occurred in *State v. Lambson,* CR–95–0139–PR, which we consolidated for oral argument with this case. There, the court of appeals relied upon its *Tarango* decision to conclude that a dangerous sex offender was eligible to be released earlier than a nondangerous sex offender. Under A.R.S. § 13–1406(B), one who commits sexual assault must serve flat time. Because Lambson's sexual assault was charged as a dangerous offense, he was sentenced under § 13–604(G). Under the majority's reading of the statute, Lambson became eligible for parole upon serving two-thirds of his eight year sentence. This is sooner than he would have been released had he been sentenced on a nondangerous basis.

The language of § 13–604(K) is language of description not language of limitation. Section 13–604(K) merely requires the filing of a charging document before § 13–604 applies. We should resort to parole eligibility statutes to find the appropriate release eligibility dates. The specific statute will control over the general. Admittedly, Arizona's sentencing scheme is enormously complex and glitches can, and do, occur. One need only look at the sentencing blotter produced by our own administrative office to see that sentencing in Arizona looks like matrix theory in abstract algebra. Nevertheless, I agree with the opinion of the court of appeals in *State v. Behl,* 160 Ariz. 527, 529, 774 P.2d 831, 833 (App.1989), that "the legislature did not intend this absurd result. We have a duty to harmonize the statutes to the extent possible so that both will be operative." I therefore respectfully dissent.